**SOLE RESORT, S.A. DE C.V.,**
Petitioner–Appellant,

v.

**ALLURE RESORTS MANAGEMENT,**
LLC, Respondent–Appellee.

**Docket No. 05–5786–CV.**

United States Court of Appeals,
Second Circuit.

Argued: March 6, 2006.

Decided: June 13, 2006.

Kenneth I. Schacter, Bingham McCutchen LLP (Susan Kim and Brian R. Hole, on the brief), New York, NY, for Petitioner–Appellant.

Jeffrey Daichman, Kane Kessler, P.C., New York, NY, (Alan S. Loewinsohn and Carol E. Farquhar, Loewinsohn & Flegle, LLP, Dallas, TX, on the brief), for Respondent–Appellee.

Before WALKER, Chief Judge, CALABRESI and CABRANES, Circuit Judges.

JOHN M. WALKER, JR., Chief Judge.

In this appeal, Solé Resort, S.A. de C.V. ("Solé") challenges an order of the United States District Court for the Southern District of New York (Jed S. Rakoff, *Judge)* dismissing for lack of personal jurisdiction a petition to vacate an arbitration award against Solé. Both Solé and Appellee Allure Resorts Management, L.L.C. ("Allure") are non-U.S. corporations. The dispute involves a property located in Mexico, and the arbitration took place in Miami, Florida. Solé argues that New York courts have jurisdiction over its petition pursuant to New York Civil Practice Law and Rules section 302(a) because the contract giving rise to the arbitrated dispute involved sufficient activity in New York to justify jurisdiction, see N.Y. C.P.L.R. § 302(a)(1), and because Allure committed a tortious act whose effect was felt in New York, *see id.* § 302(a)(3). Allure, on the other hand, contends that section 302(a)(1) permits a court to look only to the actions of the arbitrators when determining whether jurisdiction is proper in a petition to vacate an arbitration award and that, in any case, the New York contacts related to the underlying contract are insufficient. Allure also denies that it committed a tortious act. For the reasons that follow, we think the jurisdictional inquiry properly includes an examination of the parties' activities related to the contract underlying the arbitrated dispute, we express no opinion as to the sufficiency of the New York contacts in the instant case, and we remand the case to the district court to perform this analysis in the first instance.

## BACKGROUND

Solé, a company organized under the laws of Mexico, and Allure, a limited liability company organized under the law of the Turks & Caicos with its principal offices in the Dominican Republic, entered into an agreement whereby Allure would manage a hotel owned by Solé and located in Tulum, Mexico. The agreement provided that it would be governed by Delaware law and that any disputes would be resolved by arbitration in Miami. Allure failed to generate the business for Solé's hotel that the parties had anticipated when they entered into the agreement, and the relationship between Solé and Allure soured. After ten months of disappointing performance by Allure, Solé terminated the contract.

Accepting, as we must for purposes of this appeal, Solé's account of the facts as true, see *CutCo Indus., Inc. v. Naughton,*

806 F.2d 361, 365 (2d Cir.1986), the formation, performance, and termination of the contract between Allure and Solé involved several contacts with New York. First, Solé's decision to enter into the .management agreement was based, in part, on a business plan that Allure sent to Gilberto Sandretto, Solé's principal owner, at his home in New York. Second, the negotiation of the management agreement included the exchange of numerous drafts sent by email to and from Solé's counsel in New York, as well as several conference calls in which Solé's counsel participated from New York. Third, one of Allure's principals traveled to New York to meet with local tour operators and developed plans to promote the hotel in New York. Finally, at a meeting in New York's JFK airport, Sandretto informed an Allure representative that he was considering terminating the agreement, which he did several days later by a letter mailed from New York.

Alleging that Solé had breached their agreement, Allure commenced an arbitration proceeding against Solé. As provided for in the contract, the arbitration took place in Miami, Florida. The arbitrators found in favor of Allure and awarded $2,157,653.08 in lost future profits. Solé then brought this action in the Southern District of New York to vacate the award on the ground that the arbitrators "manifestly disregarded the applicable law in awarding damages and the amount of its award is arbitrary and capricious."

Allure moved to dismiss the petition for lack of personal jurisdiction, and the district court granted the motion. *Solé Resorts, S.A., de C.V. v. Allure Resorts Mgmt., LLC,* 397 F.Supp.2d 426 (S.D.N.Y. 2005). Applying New York's long-arm statute, the district court first concluded that the parties' contacts with New York were insufficient to support an exercise of jurisdiction because Solé's complaint is based solely on the actions of the arbitrators, all of which took place in Florida. Thus the cause of action arises from business transacted within Florida, not New York. *Id.* at 429. Next, the district court reasoned that, because the arbitration panel determined that Allure did not commit the tort about which Solé complains and Solé has not challenged that determination in its petition, Solé has no colorable claim that Allure committed a tort that caused injury in New York and, consequently, jurisdiction cannot be exercised on that basis. *Id.* at 429–30. This appeal followed.

## DISCUSSION

We review dismissals for lack of personal jurisdiction *de novo. Grand River Enters. Six Nations, Ltd. v. Pryor,* 425 F.3d 158, 165 (2d Cir.2005). The Convention on the Recognition and Enforcement of Foreign Arbitral Awards, *opened for signature* June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38 ("New York Convention"), governs this dispute[1] and provides federal subject matter jurisdiction. 9 U.S.C. § 203. The amenability of an out-of-state

---

1. The district court determined that, because the arbitration award in dispute is the judgment of a domestic arbitration panel, the case *is governed by the Federal Arbitration Act* ("FAA") rather than the New York Convention. *Solé Resorts, S.A., de C.V.,* 397 F.Supp.2d at 427 n. 1. The parties agree, however, that because the arbitration involves two foreign corporations and a property located outside the United States, the New York

Convention governs. *See Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.,* 126 F.3d 15, 19 (2d Cir.1997). In any event, *the determination of this issue makes no substantive difference in the analysis of this case.* In fact, the FAA and the New York Convention work in tandem, and they have "overlapping coverage" to the extent that they do not conflict. *Id.* at 20.

corporation to suit in a federal district court is determined by the law of the state in which the district court sits. See Fed. R.Civ.P. 4(k)(1)(A); *Sunward Elecs., Inc. v. McDonald,* 362 F.3d 17, 23 (2d Cir. 2004); *United States v. First Nat. City Bank,* 379 U.S. 378,381, 85 S.Ct. 528, 13 L.Ed.2d 365 (1965). The question before us is thus whether New York law provides for jurisdiction over the parties.

Solé does not contend that Allure's contacts with New York are so "continuous and systematic," *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 415, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984) (internal quotation marks omitted), that it is subject to the jurisdiction of courts in New York on a general jurisdiction theory. Instead, it asserts that jurisdiction is premised on New York's long-arm statute, which provides for specific jurisdiction over non-domiciliaries under certain circumstances. *See* N.Y. C.P.L.R. § 302. Specifically, Solé argues that section 302(a) subsections (1) and (3) provide for jurisdiction over Allure in New York courts. In relevant part, section 302(a) provides:

> As to a cause of action arising from [the actions listed in this section], a court may exercise personal jurisdiction over any non-domiciliary ... who in person or through an agent:
>
> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or ...
>
> 3. commits a tortious act without the state causing injury to person or property within the state ... if he ... (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.

*Id.* § 302(a).

## I. N.Y. C.P.L.R. § 302(a)(1)

■ To establish personal jurisdiction under section 302(a)(1), two requirements must be met: (1) The defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity. *McGowan v. Smith,* 52 N.Y.2d 268, 273, 437 N.Y.S.2d 643, 419 N.E.2d 321 (1981). The district court reasoned that, regardless of any business the parties may have transacted within New York, Solé's claim sprang solely from the actions of the arbitrators, which took place in Miami, Florida. Thus, the asserted claim could not arise from any New York-based activity, and the court could not assert jurisdiction pursuant to section 302(a)(1). Because the district court held that the "arising from" requirement proved dispositive to the jurisdictional question, we begin our analysis there.

■ New York courts have held that a claim "aris[es] from" a particular transaction when there is "some articulable nexus between the business transacted and the cause of action sued upon," *McGowan,* 52 N.Y.2d at 272, 437 N.Y.S.2d 643, 419 N.E.2d 321, or when "there is a substantial relationship between the transaction and the claim asserted," *Kreutter v. McFadden Oil Corp.,* 71 N.Y.2d 460, 467, 527 N.Y.S.2d 195, 522 N.E.2d 40 (1988). A connection that is "merely coincidental" is insufficient to support jurisdiction. *Johnson v. Ward,* 4 N.Y.3d 516, 520, 797 N.Y.S.2d 33, 829 N.E.2d 1201 (2005). This inquiry is a fact-specific one, and when the connection between the parties' activities in New York and the claim crosses the line from "substantially related" to "mere coincidence" is not always self-evident. In fact, "[w]hile there has been much discussion of what amounts to transacting business under section 302(a)(1), there has been little analysis of when a cause of action 'arises' out of business so transacted." *Fontanetta v. Am. Bd. of Internal Med.,* 421 F.2d 355, 357 (2d Cir.1970) (footnote omitted). In

this appeal, we must decide whether the New York contacts underlying a contract that gives rise to an arbitration have an articulable nexus with or a substantial relationship to a challenge to the arbitrators' award. This is a novel question, both in this court and in the New York courts, but we think that they do.

In cases where claims have been dismissed on jurisdictional grounds for lack of a sufficient nexus between the parties' New York contacts and the claim asserted, the event giving rise to the plaintiff's injury had, at best, a tangential relationship to any contacts the defendant had with New York. In fact, in those cases, the injuries sustained and the resulting disputes bore such an attenuated connection to the New York activity upon which the plaintiffs attempted to premise jurisdiction that the disputes could not be characterized as having "arisen from" the New York activity. *E.g., Johnson,* 4 N.Y.3d at 520, 797 N.Y.S.2d 33, 829 N.E.2d 1201 ("Plaintiffs' cause of action arose out of Defendant's allegedly negligent driving in New Jersey, not from the issuance of a New York driver's license or vehicle registration."); *Holness v. Mar. Overseas Corp.,* 251 A.D.2d 220, 676 N.Y.S.2d 540 (1998) (despite New York corporation's contract with Virginia company to repair its ships, injury sustained by worker repairing those ships in Virginia did not arise from the contract); *Beacon Enters., Inc. v. Menzies,* 715 F.2d 757 (2d Cir.1983) (plaintiffs' declaratory judgment action that they were not infringing on defendant's trademarks did not arise from her New York business activities); *Fontanetta,* 421 F.2d at 358–59 (plaintiff's claim arose from his failure to pass oral medical boards administered in Pennsylvania and Missouri, not the administration of the written exam in New York); *Gelfand v. Tanner Motor Tours, Ltd.,* 339 F.2d 317, 321 (2d Cir.1964) (plaintiffs' claim arose from negligent acts committed in Arizona, not the purchase of bus tickets in New York).

Here, by contrast, we think that New York contacts underlying a contract that provides for arbitration have the requisite relationship under section 302(a)(1) to a claim challenging the results of that arbitration. Arbitration is entirely a creature of contract. The rules governing arbitration, its location, the law the arbitrators will apply, indeed, even which disputes are subject to arbitration, are determined entirely by an agreement between the parties. Any arbitration proceeding is thus an extension of the parties' contract with one another, a mechanism through which they attempt to ensure compliance with the terms of that contract. Without the contract, the arbitration, and its resultant judgment, a subsequent challenge to that judgment never could exist. There is therefore a substantial relationship between a challenge to the arbitrators' decision and the contract that provided for the arbitration. Accordingly, we think that any transaction of business in New York in connection with a contract as to which there is an arbitration provision bears an "articulable nexus" to a challenge to the arbitrators' disposition of a dispute pursuant to that arbitration provision. *McGowan,* 52 N.Y.2d at 272, 437 N.Y.S.2d 643, 419 N.E.2d 321.

While the question has not been directly addressed in the context presented by this appeal, there is case law supporting our position. Several courts have rejected jurisdiction over a party because its New York contacts underlying a contract giving rise to an arbitrated dispute were insufficient to support jurisdiction. By implication, these cases assume that such contacts are germane to the question of post-arbitration personal jurisdiction under New York's long-arm statute. *See BHP Trading (UK) Ltd. v. Deep Sea Int'l Shipping*

*Co.,* No. 90–cv–2231, 1991 WL 198747, at *4 (S.D.N.Y. Sept.23, 1991) ("Plaintiff's claim ... arises not from a breach of the [contract with New York contacts], but from a breach of [an agreement], which, it is conceded, had no connection with New York."); *Andros Compania Maritima S.A. v. Intertanker Ltd.,* 714 F.Supp. 669, 675–76 (S.D.N.Y.1989) (noting that "the only 'business' which could have been transacted, and out of which this claim to enforce an arbitration award could have arisen, was the underlying ... contract"); *In re Transatlantic Bulk Shipping Ltd.,* 622 F.Supp. 25, 26 (S.D.N.Y.1985) ("The charter party was not negotiated or made in New York nor does it consent to New York jurisdiction or adopt New York law.").[2]

Allure's contention to the contrary is unpersuasive. It points out that Solé's claim is limited to allegations that the arbitrators disregarded the law in awarding judgment to Allure. As a result, Allure argues that the claim is about the actions of the arbitrators, not about the facts underlying the dispute that led to the arbitration, and the district court correctly limited its inquiry to those actions. In support of this position, Allure relies on *Crow Construction Co. v. Jeffrey M. Brown Assocs., Inc.,* No. 01–CV–3839, 2001 WL 1006721 (S.D.N.Y. Aug.31, 2001), for the proposition that the only activities relevant to the question of jurisdiction are those related to the arbitration itself. In that case, the district court stated that "[t]he locus of operative facts in an action [to vacate an arbitration award] is the site where the arbitration took place." *Id.* at *3. In the portion of *Crow* on which Allure relies, however, the court was not considering the issue of personal jurisdiction, but rather a motion to transfer venue, which requires consideration of the convenience of the parties and the location of witnesses.[3] 28 U.S.C. § 1404(a); *Crow,* 2001 WL 1006721, at *2–3. In such an inquiry, the location of the arbitration itself might be a determining factor. But while New York's long-arm statute does not extend to the full reach permitted by the United States Constitution, *e.g., Talbot v. Johnson Newspaper Corp.,* 71 N.Y.2d 827, 829, 527 N.Y.S.2d 729, 522 N.E.2d 1027 (1988), it is not constrained by convenience. Instead, it simply asks whether the parties' activities in New York and the asserted claim are substantially related. And while the arbitrators' actions themselves took place outside New York, those actions necessarily bear a substantial relationship to the events underlying the contract that created the arbitration. We express no opinion as to whether the parties' contacts with New York that gave rise to the arbitration were sufficient to establish jurisdiction under New York's long-arm statute. Instead, we remand the case to the district court to consider this question in the first

2. This is consistent with the approach taken by at least one New York court. *See Salamon v. Friedman,* 11 A.D.3d 700, 783 N.Y.S.2d 651 (N.Y.App.Div.2004) ("[The state court] had long-arm jurisdiction over the appellant [under section 302(a)(1)] through his ownership and use of real property in the State of New York, *which was the subject of the petition to confirm the arbitration award."*) (emphasis added).

3. Although a motion to transfer venue necessarily involves an inquiry into whether the action "might have been brought" in the proposed district, 28 U.S.C. § 1404(a), and that inquiry includes a determination whether the proposed district court would have personal jurisdiction over the defendants, Allure relies upon those portions of *Crow* discussing convenience to the parties. Moreover, the portions of *Crow* regarding personal jurisdiction consider whether the Eastern District of Pennsylvania could exercise jurisdiction over the parties and are thus not relevant to the meaning of New York's long-arm statute.

instance. On remand, the district court should consider whether the parties' conduct in negotiating, consummating, and performing the contract which ultimately led to the challenged arbitration satisfies the definition of "transacting business" in New York as defined by section 302(a)(1) and the relevant case law. If it finds that the requirements of New York law are satisfied, the district court should then consider whether an exercise of jurisdiction is consistent with federal due process requirements. *Grand River*, 425 F.3d at 165.

## II. N.Y. C.P.L.R. § 302(a)(3)

Alternatively, Solé argues that section 302(a)(3) of New York's long-arm statute confers jurisdiction over its claim. This provision rests the exercise of jurisdiction on five elements: (1) The defendant committed a tortious act outside the state; (2) the cause of action arose from that act; (3) the act caused injury to a person or property within the state; (4) the defendant expected or should reasonably have expected the act to have consequences in the state; (5) the defendant derives substantial revenue from interstate or international commerce. *LaMarca v. Pak–Mor Mfg. Co.*, 95 N.Y.2d 210, 214, 713 N.Y.S.2d 304, 735 N.E.2d 883 (2000). To satisfy the first element, the plaintiff "need not actually prove that defendant committed a tort but rather need only state a colorable cause of action." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 125 (2d Cir.2002). Solé contends that the business plan Allure sent to Sandretto in New York fraudulently induced him to enter into the management agreement. The district court found that, because the arbitrators determined that no tort took place and Solé did not contest that determination in its challenge to the arbitration award, Solé could not state a colorable claim that Allure committed a tort.

For the same reasons that the district court's restricted view of relevant facts with respect to section 302(a)(1) was error, confining its analysis of jurisdiction pursuant to section 302(a)(3) to the facts as determined by the arbitrators was error as well. Like Allure's breach of contract claim, Solé's fraudulent inducement claim arose out of events surrounding the formation and performance of the contract with Allure and formed a part of the arbitration proceedings. And while Solé does not challenge the arbitrators' determination of the merits of either of these claims in its petition, all of the facts underlying that contract are substantially related to Solé's claim that the arbitrators' judgment is infirm. Thus, just as the district court should have looked to all of Allure's contacts with New York underlying the management agreement with Solé when considering jurisdiction under section 302(a)(1), it should have looked beyond the arbitrators' decision to that same set of facts when considering jurisdiction under section 302(a)(3).

Accordingly, we also vacate the district court's decision with respect to section 302(a)(3). On remand, the district court should consider whether Allure's actions in sending the business plan to Sandretto support an exercise of jurisdiction pursuant to section 302(a)(3), and, if so, whether such an exercise of jurisdiction would satisfy federal due process requirements.

## CONCLUSION

For the foregoing reasons, the district court's order dismissing the case for lack of jurisdiction is vacated and the case is remanded.