Yaakov **LICCI**, a minor, by his father and natural guardian, Elihav **LICCI**, and by his mother and natural guardian, Yehudit Licci, et al., Plaintiffs–Appellants,

v.

**LEBANESE CANADIAN BANK, SAL;** American Express Bank Ltd., Defendants–Appellees.

No. 10–1306–cv.

United States Court of Appeals, Second Circuit.

Argued: Feb. 25, 2011.

Questions Certified: March 5, 2012.

Certified Questions Answered: Nov. 20, 2012.

Final Submission: Feb. 8, 2013.

Decided: Oct. 18, 2013.

Robert J. Tolchin, The Berkman Law Office, LLC, Brooklyn, NY, for Plaintiffs–Appellants.

Jonathan D. Siegfried, DLA Piper LLP (Lawrence S. Hirsh, Dewey & LeBoeuf LLP, of counsel), New York, NY, for Defendant–Appellee, Lebanese Canadian Bank, SAL.

Before: KATZMANN, Chief Judge, and KEARSE and SACK, Circuit Judges.

SACK, Circuit Judge:

When this case first came to us on appeal, we certified to the New York Court of Appeals two questions concerning the scope of New York's long-arm statute, as set forth in N.Y. C.P.L.R. 302(a)(1), in our effort to determine whether the district court had personal jurisdiction over defen-

dant Lebanese Canadian Bank, SAL ("LCB"). The Court of Appeals accepted our certified questions, and, in response, explained that a foreign bank's use of a New York correspondent account to execute dozens of wire transfers is sufficiently purposeful conduct to constitute a "transaction of business" within the meaning of that section. *Licci v. Lebanese Canadian Bank, SAL*, 20 N.Y.3d 327, 339, 984 N.E.2d 893, 900, 960 N.Y.S.2d 695, 702 (2012) (*"Licci III"*). The Court of Appeals also concluded that the allegations contained in the complaint, taken as true for these purposes, establish the requisite "nexus" or "relationship" between the foreign bank's New York business activity and the plaintiffs' claims to support the district court's exercise of personal jurisdiction under the long-arm statute. *Id.* at 340, 984 N.E.2d at 901, 960 N.Y.S.2d at 703.

Now that the New York Court of Appeals has answered the state-law portion of the jurisdictional inquiry, we must ensure that subjecting the foreign bank to personal jurisdiction in New York comports with due process protections provided by the United States Constitution. We conclude that it does. We therefore vacate

that part of the district court's judgment dismissing the complaint against defendant LCB for lack of personal jurisdiction and remand for further proceedings.

## BACKGROUND

Because our previous opinion extensively recites the facts and procedural history of this case, *see Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 55–59 (2d Cir.2012) (*'Licci II'*), we reiterate here only those facts we think necessary to understand our disposition of this appeal following the New York Court of Appeals' answers to our certified questions.

Plaintiffs are American, Canadian, and Israeli citizens who were injured, or whose family members were injured or killed, in rocket attacks allegedly carried out by Hizballah[1] in July and August 2006 in Israel. *Id.* at 54–55. Defendant LCB is a Lebanese bank with no operations, branches, or employees in the United States.[2] *Id.* at 56. To effectuate U.S.-dollar-denominated transactions, LCB maintains a correspondent bank account[3] with defendant American Express Bank Ltd. ("AmEx") in New York. *Id.* The plaintiffs allege that LCB used this correspondent

---

**1.** We continue to adopt the spelling used by the United States Department of State, which has designated Hizballah a Foreign Terrorist Organization since 1997. *See* U.S. Dep't of State, Bureau of Counterterrorism, *Foreign Terrorist Organizations* (Oct. 16, 2013), http://www.state.gov/j/ct/rls/other/des/123085.htm.

**2.** The New York Court of Appeals reported that, during the pendency of this appeal, privately owned LCB merged with the Lebanese subsidiary of Société Générale SA, a French bank. *Licci III*, 20 N.Y.3d at 330 n. 1, 984 N.E.2d at 894 n. 1, 960 N.Y.S.2d at 696 n. 1 (2012). Nothing in the record on appeal indicates that the entity we refer to as LCB has ceased to be the proper defendant-appellee in these proceedings.

**3.** A correspondent bank account is a domestic bank account held by a foreign bank, "similar to a personal checking account used for deposits, payments and transfers of funds." *Int'l Hous. Ltd. v. Rafidain Bank Iraq*, 893 F.2d 8, 9 (2d Cir.1989). Correspondent accounts "facilitate the flow of money worldwide, often for transactions that otherwise have no other connection to New York, or indeed the United States." *Licci III*, 20 N.Y.3d at 338, 984 N.E.2d at 900, 960 N.Y.S.2d at 702; *see also Tamam v. Fransabank SAL*, 677 F.Supp.2d 720, 724–25 (S.D.N.Y.2010) (noting that U.S. dollars are widely used in Lebanon, and that "Lebanese banks generally acquire U.S. currency either through the Central Bank of Lebanon clearinghouse or through correspondent banking relationships in other countries").

account to wire millions of dollars on behalf of Hizballah, knowing that such wire transfers would enable Hizballah "to plan, to prepare for and to carry out terrorist attacks," including the rocket attacks in which the plaintiffs or their family members were injured. Am. Compl. ¶ 131. Specifically, the plaintiffs allege that LCB executed wire transfers using its correspondent account in New York, for an account held by the Shahid (Martyrs) Foundation ("Shahid"), which is a "financial arm" of Hizballah. *Id.* ¶¶ 45–53. Shahid was the account holder in name only. The plaintiffs allege that funds held in Shahid's LCB account "belonged to Hizbollah and were under the control of Hizbollah," *id.* ¶ 50, and that LCB carried out wire transfers for the Shahid account "in order to assist and advance Hizbollah's goal of using terrorism to destroy the State of Israel," *id.* ¶ 129.

*Proceedings in the District Court*

The plaintiffs brought five claims against LCB: (1) commission of international terrorism in violation of the Anti–Terrorism Act, 18 U.S.C. § 2333; (2) aiding and abetting international terrorism in violation of the Anti–Terrorism Act; (3) aiding and abetting genocide, war crimes, and crimes against humanity in violation of international law, under the Alien Tort Statute, 28 U.S.C. § 1350 (the "ATS"); (4) negligence in violation of Israeli Civil Wrongs Ordinance § 35; and (5) breach of statutory duty in violation of Israeli Civil Wrongs Ordinance § 63.[4] LCB moved to dismiss all five claims for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure, and for failure to state a claim under Rule 12(b)(6).

In a memorandum decision and order dated March 31, 2010, the district court granted LCB's Rule 12(b)(2) motion to dismiss for want of personal jurisdiction. *Licci v. Am. Express Bank Ltd.*, 704 F.Supp.2d 403 (S.D.N.Y.2010) ("*Licci I* "). The district court correctly noted that a defendant may be subject to personal jurisdiction in New York under N.Y. C.P.L.R. 302(a)(1) if (1) the defendant " 'transacted business within the state; and (2) the claim asserted … arise[s] from that business activity,' " *id.* at 406 (quoting *Solé Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir.2006)), but decided that the allegations in the amended complaint were insufficient to satisfy either such prong, *id.* at 406–08.

With respect to section 302(a)(1)'s transaction of business requirement, the district court concluded that LCB's "execution of wire transfers is not a 'use' of a correspondent account which alone is sufficient to confer jurisdiction over a foreign bank" because one of the primary functions of a correspondent account is to facilitate cross-border wire transfers. *Id.* at 407. It could perceive "no meaningful distinction" between "use" of a correspondent account and the "maintenance" of such an account, which some decisions had found to be insufficient, standing alone, to establish personal jurisdiction. *Id.* at 407–08.

With respect to section 302(a)(1)'s requirement that a plaintiff's claim "arise from" New York business activity, the district court apparently interpreted New York's long-arm statute to require that the defendant's in-state transaction of business

---

4. The plaintiffs also brought a single cause of action against AmEx for negligence under Israeli law. The district court dismissed the claim with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, *Licci v. Am. Express Bank Ltd.*, 704

F.Supp.2d 403, 411 (S.D.N.Y.2010), and we affirmed, *Licci v. Lebanese Canadian Bank, SAL*, 672 F.3d 155, 158 (2d Cir.2012) (per curiam). This aspect of the matter is thus no longer before us.

proximately caused the plaintiff's injury. *Id.* at 408. It found no such proximate causation because "[t]he injuries and death suffered by plaintiffs and their family members were caused by the rockets launched by Hizbollah, not by the banking services provided by LCB through its correspondent account or wire transfers with Amex Bank via New York." *Id.*

Although the Rule 12(b)(2) dismissal rested entirely on the plaintiffs' failure to make a *prima facie* showing of long-arm jurisdiction under New York law, the district court also offered its view—without further explication—that "[t]he exercise of personal jurisdiction over LCB on the basis alleged by plaintiffs would not comport with constitutional principles of due process." *Id.* The court did not reach LCB's alternative argument that the complaint should be dismissed for failure adequately to plead a cause of action under Rule 12(b)(6).

*Proceedings in This Court*

In our initial consideration of the plaintiffs' appeal, we found the scope and application of the long-arm statute's "transaction of business" and "arising from" tests to be uncertain. We determined that we could not "confidently say whether the New York Court of Appeals would conclude that the plaintiffs" have made a *prima facie* showing of jurisdiction under N.Y. C.P.L.R. 302(a)(1). *Licci II,* 673 F.3d at 73. We therefore certified the following questions to the New York Court of Appeals:

(1) Does a foreign bank's maintenance of a correspondent bank account at a financial institution in New York, and use of that account to effect "dozens" of wire transfers on behalf of a foreign

client, constitute a "transact[ion]" of business in New York within the meaning of N.Y. C.P.L.R. § 302(a)(1)?

(2) If so, do the plaintiffs' claims under the Anti–Terrorism Act, the ATS, or for negligence or breach of statutory duty in violation of Israeli law, "aris[e] from" LCB's transaction of business in New York within the meaning of N.Y. C.P.L.R. § 302(a)(1)?

*Id.* at 74–75 (alterations in original).

On March 29, 2012, the Court of Appeals accepted our certified questions. *Licci v. Lebanese Canadian Bank, SAL,* 18 N.Y.3d 952, 967 N.E.2d 697, 944 N.Y.S.2d 472 (2012). Having heard argument on the case, the Court answered the certified questions in the affirmative. *Licci III,* 20 N.Y.3d at 341, 984 N.E.2d at 901, 960 N.Y.S.2d at 703. Equipped with this guidance, we now return to the jurisdictional questions presented.[5]

## DISCUSSION

### i. Personal Jurisdiction

 We review *de novo* the district court's Rule 12(b)(2) dismissal for lack of personal jurisdiction over the defendant. *Chloé v. Queen Bee of Beverly Hills, LLC,* 616 F.3d 158, 163 (2d Cir.2010). "In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists." *Thomas v. Ashcroft,* 470 F.3d 491, 495 (2d Cir.2006). In evaluating whether the requisite showing has been made, we construe the pleadings and any supporting materials in the light most favorable to the plaintiffs. *Chloé,* 616 F.3d at 163.

---

**5.** We deny the plaintiffs' February 8, 2013, request to supplement the record on appeal with jurisdictional allegations drawn from the complaint in a 2011 civil forfeiture action

brought by the United States against LCB in the Southern District of New York because we are of the view that it is unnecessary and would be unhelpful.

■ Determining personal jurisdiction over a foreign defendant in a federal-question case such as this requires a two-step inquiry. First, we look to the law of the forum state to determine whether personal jurisdiction will lie. *See Best Van Lines, Inc. v. Walker,* 490 F.3d 239, 242 (2d Cir. 2007). If jurisdiction lies, we consider whether the district court's exercise of personal jurisdiction over a foreign defendant comports with due process protections established under the United States Constitution. *id.; see also Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

*A. State Law*

■ New York's long-arm statute provides in relevant part that "a court may exercise personal jurisdiction over any non-domiciliary ... who in person or through an agent ... transacts any business within the state or contracts anywhere to supply goods or services in the state." N.Y. C.P.L.R. 302(a)(1). "To establish personal jurisdiction under section 302(a)(1), two requirements must be met: (1) The defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." *Solé Resort,* 450 F.3d at 103.

■ *1. Transacting Business.* In its response to our certified questions, the Court of Appeals confirmed that *Amigo Foods Corp. v. Marine Midland Bank–N.Y.,* 39 N.Y.2d 391, 348 N.E.2d 581, 384 N.Y.S.2d 124 (1976), stands for the proposition that the use of a New York correspondent bank account, standing alone, may be considered a "transaction of business" under the long-arm statute if the defendant's use of the correspondent account was purposeful. *Licci III,* 20 N.Y.3d at 338–39, 984 N.E.2d at 899–900, 960 N.Y.S.2d at 701–02. The Court con-

cluded that whether a defendant has purposefully availed itself of the New York forum is a fact-intensive inquiry inasmuch as it requires the trial court, in the first instance, to "closely examine the defendant's contacts for their quality." *Id.* at 338, 984 N.E.2d at 899–900, 960 N.Y.S.2d at 701–02. As a general matter, however,

complaints alleging a foreign bank's repeated use of a correspondent account in New York on behalf of a client—in effect, a "course of dealing"—show purposeful availment of New York's dependable and transparent banking system, the dollar as a stable and fungible currency, and the predictable jurisdictional and commercial law of New York and the United States.

*Id.* at 339, 984 N.E.2d at 900, 960 N.Y.S.2d at 702 (citation omitted).

With respect to LCB's contacts with New York, the Court of Appeals found both the frequency and deliberate nature of LCB's use of its correspondent account to be determinative. The Court focused on the allegations that LCB used its New York correspondent account "dozens" of times "to effect its support of Shahid and shared terrorist goals," not "once or twice by mistake." *Id.* at 340, 984 N.E.2d at 901, 960 N.Y.S.2d at 703. The Court confirmed that this conduct "indicates desirability and a lack of coincidence," *id.,* 984 N.E.2d at 901, 960 N.Y.S.2d at 703; that is, it reflects LCB's purposeful availment of the privilege of doing business in the New York forum.

■ *2. Claims "Arising From" a Transaction of Business.* The Court of Appeals made clear that the "arising from" prong of section 302(a)(1) does not require a causal link between the defendant's New York business activity and a plaintiff's injury. Instead, it requires "a relatedness between the transaction and the legal claim such that the latter is not completely

unmoored from the former, regardless of the ultimate merits of the claim." *Id.* at 339, 984 N.E.2d at 900, 960 N.Y.S.2d at 702. According to the Court, whether a plaintiff's claim arises from a defendant's New York contacts depends upon "the nature and elements of the particular causes of action pleaded." *Id.* at 340, 984 N.E.2d at 901, 960 N.Y.S.2d at 703. However, section 302(a)(1) "does not require that every element of the cause of action pleaded must be related to the New York contacts; rather, where at least one element arises from the New York contacts, the relationship between the business transaction and the claim asserted supports specific jurisdiction under the statute." *Id.* at 341, 984 N.E.2d at 901, 960 N.Y.S.2d at 703.

With respect to the plaintiffs' claims against LCB, which the Court of Appeals characterized as claims for breach of various statutory duties, the Court acknowledged that "[n]ot all elements of the causes of action pleaded are related to LCB's use of the correspondent account," inasmuch as "the specific harms suffered by plaintiffs flowed not from LCB's alleged support of a terrorist organization, but rather from rockets." *Id.,* 984 N.E.2d at 901, 960 N.Y.S.2d at 703. But, the Court pointed out, the plaintiffs' claims are also grounded in the allegation that LCB violated various statutory duties by using its correspondent account to funnel money to Shahid and Hizballah. *Id.* at 340, 984 N.E.2d at 901, 960 N.Y.S.2d at 703. Because the defendant's allegedly culpable conduct stems from this use of the New York correspondent account, the Court of Appeals concluded, the plaintiffs' claims are sufficiently related to LCB's New York business activity to satisfy the second prong of section 302(a)(1). *See id.,* 984 N.E.2d at 901, 960 N.Y.S.2d at 703.

The plaintiffs have therefore made a *prima facie* showing that the district court may exercise personal jurisdiction over LCB with respect to their Anti–Terrorism Act, ATS, and Israeli law claims pursuant to the state long-arm statute.

### B. Constitutional Due Process

Now that the state-law jurisdictional questions have been resolved, we must determine whether the district court's exercise of personal jurisdiction over LCB is consistent with the due process protections provided by the United States Constitution. *Ehrenfeld v. Mahfouz,* 489 F.3d 542, 547 (2d Cir.2007) ("[E]ven if the New York Court of Appeals concludes that personal jurisdiction is proper under § 302(a)(1) of the New York long-arm statute, this Court must make the ultimate determination whether this jurisdiction satisfies constitutional due process.").

Due process considerations require that the defendant "have certain minimum contacts [with the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe,* 326 U.S. at 316, 66 S.Ct. 154 (internal quotation marks omitted). Where, as in this case, the plaintiffs ask the district court to assert specific jurisdiction[6] over the defen-

---

6. A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so "continuous and systematic" as to render them essentially at home in the forum State. Specific jurisdiction, on the other hand, depends on an "affiliation between the forum and the underlying controversy," principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation. In contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to adjudication of "issues deriving from, or connected with, the very controversy that establishes jurisdiction."

dants, the jurisdictional inquiry focuses on the "affiliation between the forum and the underlying controversy." *Goodyear Dunlop Tires Operations S.A. v. Brown*, —— U.S. ——, 131 S.Ct. 2846, 2851, 180 L.Ed.2d 796 (2011) (internal quotation marks and brackets omitted).

Our analysis typically proceeds in two steps. First, we "evaluate the quality and nature of the defendant's contacts with the forum state under a totality of the circumstances test." *Best Van Lines*, 490 F.3d at 242 (citations and internal quotation marks omitted). "Where the claim arises out of, or relates to, the defendant's contacts with the forum—i.e., specific jurisdiction [is asserted]—minimum contacts [necessary to support such jurisdiction] exist where the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 127 (2d Cir.2002) (internal quotation marks omitted).

"Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (internal quotation marks omitted). Relevant factors at this second step of the analysis may include: "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; [and] (3) the plaintiff's interest in obtaining convenient and effec-

tive relief. . . ." *Metro. Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 568 (2d Cir.1996).

We pause to note that, despite the fact that section 302(a)(1) of New York's long-arm statute and constitutional due process are not coextensive, and that personal jurisdiction permitted under the long-arm statute may theoretically be prohibited under due process analysis, we would expect such cases to be rare. It would be unusual, indeed, if a defendant transacted business in New York and the claim asserted arose from that business activity within the meaning of section 302(a)(1), and yet, in connection with the same transaction of business, the defendant cannot be found to have "purposefully availed itself of the privilege of doing business in the forum and [to have been able to] foresee being haled into court there," *Bank Brussels Lambert*, 305 F.3d at 127 (internal quotation marks omitted), or the assertion of specific jurisdiction would somehow otherwise "offend traditional notions of fair play and substantial justice," *Int'l Shoe*, 326 U.S. at 316, 66 S.Ct. 154 (internal quotation marks omitted). Indeed, we have been pointed to no such decisions in this Circuit. That observation does not, however, spare us from a separate constitutional analysis in each such case.

*1. Minimum Contacts.* The jurisdictional basis for the plaintiffs' claims is LCB's execution of dozens of dollar-denominated wire transfers through its AmEx correspondent account in New York. These wire transfers are a part of the principal wrong at which the plaintiffs' lawsuit is directed inasmuch as they allege that "LCB carried out the . . . [t]ransfers as a matter of official LCB policy, in order to assist and advance Hizbollah's terrorist

---

*Goodyear Dunlop Tires Operations S.A. v. Brown*, —— U.S. ——, 131 S.Ct. 2846, 2851, 180 L.Ed.2d 796 (2011) (citations and brack-

ets omitted). There is no contention that LCB is subject to general jurisdiction in New York.

activities against Jews in Israel" in violation of various statutory duties. Am. Compl. ¶ 129.

■ We conclude that the selection and repeated use of New York's banking system, as an instrument for accomplishing the alleged wrongs for which the plaintiffs seek redress, constitutes "purposeful[ ] avail[ment] . . . of the privilege of doing business in [New York]," *Bank Brussels Lambert,* 305 F.3d at 127 (internal quotation marks omitted), so as to permit the subjecting of LCB to specific jurisdiction within the Southern District of New York consistent with due process requirements.

In light of the widespread acceptance and availability of U.S. currency, LCB could have, as it acknowledges, processed U.S.-dollar-denominated wire transfers for the Shahid account through correspondent accounts anywhere in the world. Appellee's Post–Argument Letter Brief at 10; *see also Tamam v. Fransabank SAL,* 677 F.Supp.2d 720, 729 (S.D.N.Y.2010) (noting that foreign bank defendants maintained U.S. dollar correspondent relationships with banks located in Cairo, Sri Lanka, London, Paris, Jordan, the Philippines, and Saudi Arabia, any of which they could have used to execute U.S.-dollar-denominated wire transfers on behalf of Hizballah front groups). But LCB deliberately chose to process the many Shahid wire transfers through AmEx in New York.

Moreover, LCB's use of a correspondent account in New York to accomplish its dollar-denominated wire transfers was recurring. Indeed, the plaintiffs allege wire transfers through AmEx that numbered in the dozens and totaled several million dollars, so it cannot be said that LCB's contacts with New York were "random, isolated, or fortuitous." *Keeton v. Hustler*

*Magazine, Inc.,* 465 U.S. 770, 774, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984). This deliberate and recurring activity constitutes, as the Court of Appeals put it in analyzing the applicability of New York's long-arm statute, LCB's "purposeful availment of New York's dependable and transparent banking system, the dollar as a stable and fungible currency, and the predictable jurisdictional and commercial law of New York and the United States." *Licci III,* 20 N.Y.3d at 339, 984 N.E.2d at 900, 960 N.Y.S.2d at 702; *see also id.* at 340, 984 N.E.2d at 901, 960 N.Y.S.2d at 703 (speculating that, although LCB could have routed the Shahid wire transfers through any correspondent account, cost savings or other conveniences associated with the AmEx account in New York enabled LCB to retain Shahid as a customer).

In reaching this conclusion, we by no means suggest that a foreign defendant's "mere maintenance" of a correspondent account in the United States is sufficient to support the constitutional exercise of personal jurisdiction over the account-holder in connection with any controversy. In this case, the correspondent account at issue is alleged to have been used as an instrument to achieve the very wrong alleged. We conclude that in connection with this particular jurisdictional controversy—a lawsuit seeking redress for the allegedly unlawful provision of banking services of which the wire transfers are a part—allegations of LCB's repeated, intentional execution of U.S.-dollar-denominated wire transfers on behalf of Shahid, in order to further Hizballah's terrorist goals, are sufficient. It should hardly be unforseeable to a bank that selects and makes use of a particular forum's banking system that it might be subject to the burden of a lawsuit in that forum for wrongs related

to, and arising from, that use.[7]

LCB argues that the exercise of personal jurisdiction in this case cannot be squared with our decisions in the multidistrict litigation stemming from the September 11, 2001 terrorist attacks. In *In re Terrorist Attacks on September 11, 2001*, 538 F.3d 71 (2d Cir.2008), *abrogated on other grounds, Samantar v. Yousuf,* 560 U.S. 305, 130 S.Ct. 2278, 176 L.Ed.2d 1047 (2010), the plaintiffs, who suffered personal injuries and financial losses as a result of the attacks, filed suit against hundreds of parties, including four Saudi princes who allegedly gave money to Muslim charities with the knowledge that such charities would transfer the funds to the terrorist organization al Qaeda. *Id.* at 77. We decided that minimum contacts with the United States would exist if the plaintiffs "show[ed] that the Four Princes engaged in 'intentional, and allegedly tortious, actions ... expressly aimed' at residents of the United States." *Id.* at 95 (quoting *Calder v. Jones,* 465 U.S. 783, 789, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984)) (ellipsis in original). But we could find no basis for the constitutional exercise of personal jurisdiction over the Saudi princes, explaining:

[The plaintiffs'] burden is not satisfied by the allegation that the Four Princes intended to fund al Qaeda through their donations to Muslim charities.... It may be the case that acts of violence committed against residents of the United States were a foreseeable consequence of the princes' alleged indirect funding of al Qaeda, but foreseeability is not the standard for recognizing personal jurisdiction. Rather, the plaintiffs must establish that the Four Princes "expressly aimed" intentional tortious acts at residents of the United States. Providing indirect funding to an organization that was openly hostile to the United States does not constitute this type of intentional conduct. In the absence of such a showing, American courts lacked personal jurisdiction over the Four Princes.

*Id.* at 95 (citation omitted).

Similarly, in another case related to the September 11th attacks, we affirmed the dismissal for lack of personal jurisdiction over several foreign financial institutions and individuals associated therewith who were alleged to have "knowingly maintained bank accounts for individuals associated with al Qaeda as well as for purported front charities that aided al Qaeda," where "those accounts were used for al Qaeda operations." *In re Terrorist Attacks on Sept. 11, 2001,* 714 F.3d 659, 676 (2d Cir. 2013). As with the Saudi princes, the Court rejected the exercise of personal jurisdiction over those banking defendants because they did not expressly aim their conduct at the United States. *Id.*

---

7. There is authority—albeit not concerning correspondent accounts, and arising in varied contexts—that stands for the general proposition that use of a forum's banking system as part of an allegedly wrongful course of conduct may expose the user to suits seeking redress in that forum when that use is an integral part of the wrongful conduct. *See, e.g., U.S. Securities and Exchange Commission v. Carrillo,* 115 F.3d 1540, 1545–47 (11th Cir. 1997) (resting personal jurisdiction in part on the "use of ... bank accounts to carry out the sale of unregistered securities" because the use was "manifestly related to, and gave rise to, the causes of action," "constitute[d] purposeful availment and invocation of the benefits of the forum's laws," and contributed to the expectation that the account-user might be subject to suit in the forum (emphasis in original)); *Application to Enforce Administrative Subpoenas Duces Tecum of S.E.C. v. Knowles,* 87 F.3d 413, 419 (10th Cir.1996) (resting jurisdiction in securities fraud investigation in part on the use of brokerage accounts in the forum).

But LCB fails to recognize that the *In re Terrorist Attacks* cases, as well as *Calder*, the Supreme Court case on which they rely, speak to the requirements for personal jurisdiction under the so-called "effects test." The effects test is a theory of personal jurisdiction typically invoked where (unlike here [8]) the conduct that forms the basis for the controversy occurs entirely out-of-forum, and the only relevant jurisdictional contacts with the forum are therefore in-forum effects harmful to the plaintiff. In such circumstances, the exercise of personal jurisdiction may be constitutionally permissible if the defendant expressly aimed its conduct at the forum. *See Calder*, 465 U.S. at 789, 104 S.Ct. 1482(finding the exercise of personal jurisdiction over Florida defendants in California state court "based on the 'effects' of their Florida conduct in California" to be consistent with due process because "their intentional, and allegedly tortious, actions were expressly aimed at California").

We do not, however, understand the existence of in-state effects sufficient to satisfy the "effects test" to be a prerequisite to the constitutional exercise of personal jurisdiction over a foreign defendant in cases where the conduct on which the alleged personal jurisdiction is based occurs *within* the forum. So long as this in-forum activity sufficiently reflects the defendant's "purposeful availment" of the privilege of carrying on its activities here,

minimum contacts are established, even if the effects of the defendant's entire course of conduct are felt elsewhere. *See Chloé*, 616 F.3d at 172 ("Because we have concluded that [the defendant] has purposefully availed himself of the benefits of the New York forum, we need not decide whether [his] act ... represented conduct 'expressly aimed at' New York under the *Calder* effects test."); *Best Van Lines*, 490 F.3d at 243 ("Although Calder and Keeton were handed down simultaneously on similar subjects, they relied on independent, if conceptually overlapping, methods of demonstrating minimum contacts—*Keeton* on the defendant's overall activity within the forum state; *Calder* on the in-state effects of out-of-state activity.").

As we have explained, LCB's repeated use of the correspondent account—and hence New York's banking system—as an instrument to achieve the wrong complained of in this suit satisfies the minimum contacts component of the due process inquiry.

*2. Reasonableness.* Where a defendant has purposefully directed its activities at the forum state, it may still defeat jurisdiction on due process grounds. To do so, however, it "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp.*, 471 U.S. at 477, 105 S.Ct. 2174; *see also Metro. Life Ins. Co.*, 84 F.3d at 575 (instructing that "dismissals resulting from the ap-

---

**8.** Whereas LCB purportedly supplied Shahid and Hizballah with U.S. dollars obtained from AmEx in New York by executing dozens of dollar-denominated wire transfers through its correspondent account, nothing in the September 11th cases suggests that the Sudanese, Saudi Arabian, and Liechtenstein-based banks which allegedly provided financial services to al Qaeda and its affiliates did so by way of the United States. This factual difference may well explain the application of the "effects test" in the *In re Terrorist Attacks*

cases. The only explicit mention of bank accounts held in New York in either case appears to be that in *In re Terrorist Attacks on September 11, 2001*, 714 F.3d at 680, during a discussion of whether the existence of correspondent bank accounts in New York could give rise to *general* jurisdiction. And, indeed, in finding that they could not give rise to such all-purpose jurisdiction, we expressly distinguished the Court of Appeals' response to our certified questions in this case as not implicating that issue. *Id.* at 680 n. 16.

plication of the reasonableness test should be few and far between"). In conducting this part of the due process inquiry, we focus on the factors we identified in Part I.B of this discussion, above.

We recognize, of course, that LCB is based in Lebanon and that all of the plaintiffs, including those who are American citizens, reside in Israel; accordingly, many of the documents and witnesses relevant to this litigation are located abroad. But "the conveniences of modern communication and transportation ease" any burden the defense of this case in New York might impose on LCB. *Metro. Life Ins.*, 84 F.3d at 574.

It is true, moreover, that the injuries and deaths for which compensation is sought occurred in Israel. The claims, which are premised on LCB's use of a correspondent account to support a terrorist organization, however, involve acts by banks in New York. And although not controlling, weighed in the balance is the United States' and New York's interest in monitoring banks and banking activity to ensure that its system is not used as an instrument in support of terrorism, money laundering, or other nefarious ends.

Considering these factors together, and in conjunction with the plaintiffs' showing of minimum contacts, we conclude that the exercise of personal jurisdiction over LCB would not offend principles of fair play and substantial justice. LCB has identified no important interests that outweigh those of the plaintiffs and the forum state such that New York's assertion of jurisdiction would be unconstitutional. Thus, the district court's exercise of personal jurisdiction over LCB is consistent with due process protections.

## II. Subject Matter Jurisdiction

Because our remand may revive LCB's Rule 12(b)(6) motion to dismiss, we note the issue of subject matter jurisdiction with respect to the plaintiffs' ATS claim. In our prior treatment of this appeal, we predicted that should the Supreme Court affirm this Court's opinion in *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111 (2d Cir.2010), "we will likely be required to affirm the dismissal of the ATS claims" based on our conclusion in *Kiobel* that the ATS does not provide subject matter jurisdiction over corporate defendants for violations of customary international law. *Licci II*, 673 F.3d at 73. The Supreme Court has indeed affirmed, but on different grounds from those upon which we decided the appeal. *See Kiobel v. Royal Dutch Petroleum Co.*, ── U.S. ──, 133 S.Ct. 1659, 1669, 185 L.Ed.2d 671 (2013) (deciding that the presumption against extraterritoriality constrains federal courts from hearing causes of action under the ATS "seeking relief for violations of the law of nations occurring outside the United States"); *see also Balintulo v. Daimler AG*, 727 F.3d 174 (2d Cir.2013) (applying *Kiobel* to find the plaintiffs' ATS claims barred).

Because the question of subject matter jurisdiction was not briefed on appeal, because the Supreme Court's opinion did not directly address the question of corporate liability under the ATS, and in light of the other claims brought by the plaintiffs, we now think it best for the district court to address this issue in the first instance.

## CONCLUSION

For the foregoing reasons, that portion of the district court's judgment dismissing claims against defendant LCB for lack of personal jurisdiction is vacated and the case is remanded for further proceedings.