**MOTOROLA CREDIT CORP., et al., Plaintiffs,**

v.

**Kemal UZAN, et al., Defendants.**

**No. 02 Civ. 666(JSR).**

United States District Court, S.D. New York.

Signed Sept. 9, 2015.

Gordon M. Clay, John F. O'Connor, Steven K. Davidson, Steptoe & Johnson, L.L.P., Howard H. Stahl, Fried, Frank, Harris, Shriver & Jacobson, LLP, Washington, DC, Mishell B. Kneeland, Munsch Hardt Kopf & Harr, P.C., Austin, TX, Jason Brown, Ropes & Gray, LLP, New York, NY, for Plaintiffs.

Kenneth M. Bialo, Emmet, Marvin & Martin, LLP, Mark Benjamin Holton, Gibson, Dunn & Crutcher, LLP, Robert F. Serio, Thomas C. Sheehan, Gibson, Dunn & Crutcher, LLP, New York, NY, for Defendants.

*MEMORANDUM ORDER*

JED S. RAKOFF, District Judge.

For over a decade, plaintiff Motorola Credit Solutions f/k/a Motorola Credit Corporation ("Motorola") has been trying to collect billions of dollars in judgment from defendants Kemal Uzan, Murat Hakan Uzan, Cem Cengiz Uzan, Melahat Uzan, Aysegul Akay, and Antonio Luna Betancourt (the "Uzans").[1] Relying on a web of proxies, the Uzans have evaded payment. In 2012, the Court permitted Motorola to serve *ex parte* discovery requests on third parties to gather information about "[d]efendants' and/or their agents' assets or whereabouts." Order Regarding Service of *Ex Parte* Discovery Requests, No. 1:02–cv–00666–JSR (S.D.N.Y. Nov. 19, 2012). In 2013, Motorola served subpoenas on the New York branches of three foreign banks, "Bank 1," "Bank 2," and "Bank 3."

The banks have refused to comply with the subpoenas with respect to certain material located outside the United States. Initially, the Court agreed with Bank 1's objections, on international comity grounds, to producing documents held in the United Arab Emirates (the "UAE") and Jordan. *Motorola Credit Corp. v. Uzan,* 293 F.R.D. 595, 601 (S.D.N.Y.2013). However, Motorola moved for reconsideration, and, after oral argument and full briefing, the Court revisited its prior decision and ordered all recipients of Motorola subpoenas to comply with them even in the UAE and Jordan. *Motorola Credit Corp. v. Uzan,* 73 F.Supp.3d 397, 405 (S.D.N.Y. 2014). The banks have now moved for reconsideration in light of the Supreme Court's decision in *Daimler A.G. v. Bau-*

*man,* — U.S. ——, 134 S.Ct. 746, 187 L.Ed.2d 624 (2014), and the Second Circuit's decision in *Gucci America, Inc. v. Bank of China,* 768 F.3d 122 (2d Cir.2014).

■ The Court first addresses whether reconsideration is appropriate. Although the standard is "strict," *Shrader v. CSX Transp. Inc.,* 70 F.3d 255, 257 (2d Cir. 1995), reconsideration is justified when there is "an intervening change of controlling law." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.,* 956 F.2d 1245, 1255 (2d Cir.1992) (citation omitted). *Daimler* and *Gucci* significantly changed the law of personal jurisdiction. Both were decided after this Court issued its December 22, 2014 Order compelling compliance with the subpoenas.[2] In light of the intervening changes wrought by *Daimler* and *Gucci,* the Court grants the banks' request for reconsideration.

■ The banks raise several arguments against compelling compliance, but, in this Memorandum Order, the Court addresses only the threshold question of personal jurisdiction. A court "must have personal jurisdiction over a nonparty in order to compel it to comply with a valid discovery request." *Gucci,* 768 F.3d at 141. Personal jurisdiction over a foreign corporate entity depends on (1) the laws of the forum state and (2) whether jurisdiction over the foreign entity comports with constitutional due process requirements. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL,* 732 F.3d 161, 168 (2d Cir. 2013). In light of the constitutional obstacles to asserting jurisdiction over the banks, the Court does not reach the ques-

---

1. The history of this litigation is set forth in the Court's previous decisions in this matter, familiarity with which is here presumed. *See, e.g., Motorola Credit Corp. v. Uzan,* 73 F.Supp.3d 397, 398–400 (S.D.N.Y.2014).

2. *Daimler* was decided on January 14, 2014; *Gucci* was decided on September 17, 2014.

tion of whether New York's long-arm statute allows for jurisdiction over them.

■ The banks argue, correctly, that *Gucci* prevents this Court from asserting general jurisdiction over them. General jurisdiction depends on whether "the corporation's affiliations with the State in which suit is brought are so constant and pervasive 'as to render [it] essentially at home in the forum State.'" *Daimler AG v. Bauman,* —— U.S. ——, 134 S.Ct. 746, 751, 187 L.Ed.2d 624 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915, 131 S.Ct. 2846, 2851, 180 L.Ed.2d 796 (2011)). Applying *Daimler* in the context of non-party discovery, the Second Circuit held that a district court could not enforce a subpoena against a non-party foreign bank simply because it operated branches in the United States. The bank in *Gucci,* Bank of China ("BOC"), was incorporated and had its principal place of business abroad. Moreover, "BOC [had] only four branch offices in the United States and only a small portion of its worldwide business [was] conducted in New York." *Gucci,* 768 F.3d at 135. The Second Circuit concluded that the bank was not "at home" in New York and could not be subjected to general jurisdiction here. *See id.*

*Gucci* is on all fours with the banks in this case. The Court has received no indication that the banks' contacts with New York would be materially different from those of BOC considered by the Second Circuit in *Gucci.* All three banks are incorporated and maintain their principal places of business abroad, and no "exceptional circumstances" exist that would otherwise support general jurisdiction over them. *Daimler,* 134 S.Ct. at 761 n. 19; *see* Bank 2 Jan. 30, 2015 Mem. at 6; Bank 1 Jan. 30, 2015 Mem. at 8 (quoting *Gucci,* 768 F.3d at 126). None of the banks are "at home" in New York.

■ Motorola argues that the banks have waived their objections to personal jurisdiction. First, Motorola argues that the "banks have consented to jurisdiction by appearing in the case." P. Jan. 30, 2105 Resp. Mem. to Banks 2 & 3 at 4; P. Jan. 30, 2015 Resp. Mem. to Bank 1 at 3. It is true that none of the banks presented objections to personal jurisdiction when they first appeared. However, "a party cannot be deemed to have waived objections or defenses which were not known to be available at the time they could first have been made." *Hawknet, Ltd. v. Overseas Shipping Agencies,* 590 F.3d 87, 92 (2d Cir.2009) (citation omitted). The banks' objections to jurisdiction were not available before *Daimler* and *Gucci.* *See Gucci,* 768 F.3d at 135–36. Therefore, the banks did not waive their objections by failing to raise them earlier.

Second, Motorola contends that the banks have constructively consented to the Court's jurisdiction "by obtaining a license to conduct banking operations in New York" under State and federal law. P. Jan. 30, 2105 Resp. Mem. to Banks 2 & 3 at 4; P. Jan. 30, 2015 Resp. Mem. to Bank 1 at 3. Under New York Banking Law § 200, Banks 1 and 2 must register with and be licensed by the Superintendent of the Department Financial Services, who may receive service on their behalf. Bank 3 holds a federal banking license. *See* Bank 3 March 25, 2015 Suppl. Letter–Brief at 1–2. However, to find that satisfaction of requirements mandatory for operation of a branch in New York signal constitutional consent to jurisdiction would directly contradict *Gucci.* *Gucci* stands for the proposition that mere operation of a branch office in a forum—and satisfaction of any attendant licensing requirements—is not constitutionally sufficient to establish general jurisdiction. Accordingly, the Court finds that the banks did not consent to this

**522**

Court's jurisdiction by registering or being licensed under New York Banking Law § 200 or federal law.

The banks contend that *Gucci* also resolves the question of specific jurisdiction. They read *Gucci* as requiring a connection between "the nonparty's contact with the forum and the discovery order at issue." *Gucci,* 768 F.3d at 141. Specifically, the banks argue that there is no basis for specific jurisdiction here because the documents at issue are located abroad. *see* Bank 1 Jan. 30, 2015 Mem. at 8–9; Bank 3 Jan. 30, 2015 Mem. at 10; Bank 2 Jan. 30, 2015 Mem. at 6–7.

The Court declines to adopt this view in the abstract. *Gucci* did not establish a clear standard for determining specific jurisdiction over nonparties in the context of discovery requests. The Second Circuit observed that "the Supreme Court has not ... addressed specific jurisdiction over nonparties," *Gucci,* 768 F.3d at 137, and stated that "[a]t least one circuit has translated [the test for specific jurisdiction over defendants] to nonparty discovery requests by focusing on the connection between the nonparty's contacts with the forum and the discovery order at issue." *Id.* at 141–42 (citing *Application to Enforce Admin. Subpoenas Duces Tecum of the S.E.C. v. Knowles,* 87 F.3d 413, 418 (10th Cir.1996)). The Court does not read this language to imply that no specific jurisdiction exists over nonparties for the purposes of discovery of documents located abroad. Taken to an extreme, this position would erect *Gucci* as a constitutional barrier to all discovery requests directed at material held abroad by nonparties.

Motorola's briefs do not directly address the question of specific jurisdiction. Because the Court granted the banks' motion for reconsideration, the Court will provide Motorola and the opposing banks the op-

portunity to submit further briefing addressing specific jurisdiction, keeping in mind that specific jurisdiction is the sole possibility for the Court to exercise jurisdiction over the banks.

For the foregoing reasons, the Court, upon reconsideration, finds that it lacks general jurisdiction over the non-party banks. But the Court reserves the question of specific jurisdiction. The parties are directed to jointly call Chambers by September 17, 2015 to schedule briefing on that issue.

SO ORDERED.